GENTILA v. PACE, Secretary of the Army.

No. 10839.

United States Court of Appeals
District of Columbia Circuit.

Argued April 24, 1951.

Decided Nov. 23, 1951.

Writ of Certiorari Denied March 3, 1952.

See 72 S.Ct. 556.

Cornelius H. Doherty, Washington, D. C., for appellant.

David Orlikoff, Washington, D. C., Attorney, Department of Justice, of the Bar of the Court of Appeals of New York, *pro hac vice,* by special leave of Court, with whom Acting Asst. Atty. Gen. Newell A. Clapp and George Morris Fay, U. S. Atty. at the time the brief was filed, both of Washington, D. C., were on the brief, for appellee.

Thomas E. Walsh, Attorney, Department of Justice, Charles M. Irelan, appointed U. S. Atty. subsequent to the argument in this case, and Joseph M. Howard, Asst. U. S. Atty., all of Washington, D. C., also entered appearances for appellee.

Before EDGERTON, BAZELON, and FAHY, Circuit Judges.

EDGERTON, Circuit Judge.

Appellant's complaint filed by his mother as next friend, for a mandatory injunction against the Secretary of the Army makes these assertions:

Appellant was inducted into the army in 1942. He went absent without leave in 1943 and returned to duty in 1944. He was then given a dishonorable discharge under a medical officer's diagnosis, "the record indicating a mental condition." His discharge was "based upon desertion and physical fitness" (*sic;* unfitness must be meant). He "at no time was tried for the offense of desertion." He "was discharged without an opportunity to defend himself against this charge or to present competent testimony in his behalf, nor was he allowed counsel to advise him of his rights in the premises." [1] When he went absent without leave and when he was discharged, he was schizophrenic and incapable of having an intent to desert. "The type of discharge given to him was not in accordance with law nor in accordance with the army reg-

---

1. The complaint does not suggest that any of these privileges were denied at either of the two hearings which appellant afterwards had before the Discharge Review Board.

ulations then in force." More than a year after his discharge, he was found to be schizophrenic and committed to a civilian mental hospital. He then applied to the Army Discharge Review Board for an honorable discharge. This application was denied in 1947. The Review Board granted him a second hearing but in 1948 again denied his application for an honorable discharge. The Board's action was arbitrary and without evidence to support it. The Board "was not properly authorized and constituted in accordance with the Act of Congress authorizing" it. Appellee, the Secretary of the Army, failed to "personally" review the action of the Army Discharge Review Board.

The complaint asks that appellee be directed to cancel appellant's dishonorable discharge and give him a medical or an honorable discharge. This appeal is from an order dismissing the complaint on appellee's motion.

■ The statement in the complaint that the Board was not properly authorized and constituted is a conclusion of law unsupported by any allegation of fact. The statement that the Board's action was without evidence and arbitrary is not only unsupported by allegations of fact but is contradicted by the statement that the appellant was dishonorably discharged "under", i. e. in accordance with, a medical diagnosis.[2]

It is immaterial that the Secretary of the Army did not "personally" review the Board's action. A statute provides that the findings of an Army Discharge Review Board shall be "final subject only to review by the Secretary * * *",[3] but "the disposition of official matters by an Acting Secretary is frequently necessary and the integrity of administration demands that credit be given to his action in that capacity."[4]

Congress has provided that no enlisted man shall be discharged "except in the manner prescribed by the Secretary of the Department of the Army, or by sentence of a general or special court-martial."[5] Army Regulations No. 615-366, paragraph 8, dated 21 October 1944, one month before appellant was discharged, authorizes the discharge of an enlisted man "without trial, because of desertion and physical unfitness."[6] But the quoted Regulation does not apply when the enlisted soldier "does not possess sufficient mentality to distinguish between right and wrong and is consequently incapable of forming the intent which is an essential element of the offense of desertion." In the light of this Regulation, together with the statement in appellant's complaint that he was schizophrenic and incapable of having an intent to desert, appellee's motion to dismiss should perhaps be regarded as admitting for present purposes that appellant's dishonorable discharge was based upon an erroneous finding of fact in regard to his mental condition.

■ Our task would have been simplified if the appellee instead of moving to dismiss had filed a motion, accompanied by affidavits, for summary judgment. In our opinion this would have been the better practice. But we have reached the conclusion that the District Court was right in granting the motion to dismiss.

The Administrative Procedure Act withholds judicial review of administrative action "so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion."[7] Congress created the Army Discharge Review Board for the express purpose of reviewing Army discharges. Congress required the Board to hold a full hearing. The Board's review is to be "based upon all available records * * * relating to the person requesting such review, and such other evidence as may be presented by such person. Witnesses shall be permitted to present testimony either in person or by affidavit and

---

2. We do not understand the complaint to assert that the Review Board did not have this diagnosis before it.

3. 58 Stat. 287, § 301, 38 U.S.C.A. § 693h.

4. Morgan v. United States, 298 U.S. 468, 479, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (Secretary of Agriculture).

5. 62 Stat. 642, 10 U.S.C., Supp. IV, § 1580, 10 U.S.C.A. § 652a.

6. It defines "physical unfitness" as including mental unfitness.

7. 60 Stat. 243, § 10, 5 U.S.C.A. § 1009.

the person requesting review shall be allowed to appear before such board in person or by counsel * * *." After this full hearing the Board is authorized, "except in the case of a discharge or dismissal by reason of the sentence of a general court martial, to change, correct, or modify any discharge or dismissal, and to issue a new discharge in accord with the facts presented to the board." [8] Moreover, the statute expressly makes the findings of the Board "final subject only to review by the Secretary."

We think Congress intended that the Board's full and "final" [9] review should not be subjected to a further review, or series of reviews, in the courts.[10] We may suppose that Congress considered the heavy burden that would be imposed upon courts if they were required to review the findings upon which Army discharges are based. As the Supreme Court has said in regard to a type of dispute for which the Railway Labor Act provides, the "intent seems plain— the dispute was to reach its last terminal point when the administrative finding was made. There was to be no dragging out of the controversy into other tribunals of law." Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 305, 64 S.Ct. 95, 99, 88 L.Ed. 61. At the very least, we think the statute intends that merely erroneous findings of fact by the Discharge Review Board shall not be revised by a court. Stripped of self-contradiction and legal conclusions, all that the complaint alleges against the Board's action is that it was based on an erroneous finding of fact. In our opinion appellee's technical admission that the finding was erroneous does not create an exception to the rule of finality.

Since we think the statute precludes judicial review in this case we need not consider whether, if this were not so, appellant's complaint would still have to be dismissed for failure to show exhaustion of administrative remedies because it does not say that he specifically [11] asked the Secretary for review in every name and form in which the Secretary could have granted it.[12]

Affirmed.

---

8. 58 Stat. 286, § 301, 38·U.S.C.A. § 693h.

9. Special circumstances may show that a particular statute describing administrative action as final is *not* intended to preclude judicial review. McGrath v. Kristensen, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173.

10. We find little or no authority directly in point. The Supreme Court said in 1947: "Whether and to what extent the courts have power to review or control the War Department's action in fixing the type of discharge certificates issued to soldiers, is a question that we need not here determine * * *." Patterson v. Lamb, 329 U.S. 539, 542, 67 S.Ct. 448, 449, 91 L.Ed. 485. *Cf.* Davis v. Woodring, 72 App.D.C. 83, 111 F.2d 523; Reid v. United States, D.C., 161 F. 469, *appeal dismissed*, 211 U.S. 529, 29 S.Ct. 171, 53 L.Ed. 313; Nordmann v. Woodring, D.C., 28 F.Supp. 573.

11. The complaint says in general terms, with no qualification except the word "then" (*i. e.* after the Discharge Review Board finally refused to grant an honorable discharge), that appellant "made a personal application to Honorable Kenneth C. Royall, then Secretary of the Army, to review the type of discharge which was denied."

12. "The Secretary of War, the Secretary of the Navy, and the Secretary of the Treasury with respect to the Coast Guard, respectively, under procedures set up by them, and acting through boards of civilian officers or employees of their respective departments, are authorized to correct any military or naval record where in their judgment such action is necessary to correct an error or to remove an injustice." 60 Stat. 837, § 207, 5 U.S.C.A. § 191a, amended Oct. 25, 1951, 65 Stat. 655. Correction of Military and Naval Records, 40 Op.Atty. Gen. 504 (1947); Correction of Naval Records, 41 Op.Atty.Gen. (Feb. 14, 1949). *Cf.* Bolger v. Marshall, 89 U.S.App.D.C. ——, 193 F.2d 37.
   If the Administrator of Veterans' Affairs is satisfied that a person discharged as a deserter was insane at the time, the deserter may receive all Veterans' Administration benefits. 58 Stat. 286, § 300, 38 U.S.C.A. § 693g.